# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TRAXXAS, L.P., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:19-CV-00213-JRG |
| | § | |
| SKULLDUGGERY, INC., | § | |
| | § | **FILED UNDER SEAL** |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Skullduggery, Inc.'s ("Skullduggery") Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion to Dismiss on Basis of Forum Non Conveniens and Memorandum of Law in Support (the "Motion"). (Dkt. No. 15.) Having considered the Motion and subsequent briefing, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

## I. BACKGROUND

This action commenced on June 6, 2019 when Plaintiff Traxxas, L.P. ("Traxxas") filed suit against Skullduggery for trademark infringement. (Dkt. No. 1.) Traxxas is a Texas limited partnership with its principal place of business in McKinney, Texas. (*Id.* ¶ 2.) Traxxas is in the business of producing and selling radio-controlled model vehicles and related accessories ("RC Cars"). (*Id.* ¶¶ 9–13.) Traxxas uses the registered trademark "TRAXXAS" to identify, advertise, and promote its RC Cars. (*Id.*) Additionally, Traxxas markets and sells its RC Cars under the trademarks "TRX," "PROTRAX," "LATRAX," "T-MAXX," "MAXX," "E-MAXX," "MINI MAXX," "X-MAXX," and "XMAXX" (together with TRAXXAS, the "Traxxas Marks"). (Dkt.

No. 30 ¶¶ 14–48.) Traxxas asserts that Skullduggery infringes on the Traxxas Marks by selling RC Cars under the name "MAX TRAXXX" (the "Accused Products"). (*Id.* ¶ 51.)

Skullduggery is a California corporation with its principal place of business in Anaheim, California. (Dkt. No. 1 ¶ 3.) Skullduggery makes more than a dozen different types of toys and crafts. (Dkt. No. 15 at 7.) Most of these products are produced in China. However, some of the products are produced in California. (*Id.*) Skullduggery does not make any products in Texas, does not own or lease any property in Texas, and does not employ anyone residing in Texas. (*Id.*) Skullduggery sells its products through distribution agreements with national retailers, direct sales to independent specialty retailers, sales through third-party online platforms, and direct orders from Skullduggery's website. (Dkt. No. 15-1 ¶¶ 6–8; Dkt. No. 35-4 at 88:1-14.) Skullduggery does ship its products to third-party distribution centers in Texas. (Dkt. No. 35-4 at 69:10–25.)

On November 11, 2019, Skullduggery filed the Motion contending that this Court lacks personal jurisdiction over it. (Dkt. No. 15.) Alternatively, Skullduggery moved for dismissal based on the doctrine of *forum non conveniens* because this matter is "more appropriately venued in the Central District of California." (*Id.*) Following expedited discovery regarding the issue of personal jurisdiction, Traxxas responded in opposition to the Motion arguing that personal jurisdiction is proper under a stream of commerce theory and that dismissal pursuant to the doctrine of *forum non conveniens* would be procedurally improper. (Dkt. No. 35.) Accordingly, the two issues raised by the Motion are whether Skullduggery's sales activities within Texas subject Skullduggery to this Court's personal jurisdiction and whether dismissal pursuant to *forum non conveniens* is an appropriate basis for dismissal when Skullduggery argues for the convenience of another federal forum.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). It is the plaintiff's burden to establish that personal jurisdiction exists, but the plaintiff only needs to present facts to make out a *prima facie* case supporting such jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Additionally, conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff for the purpose of determining whether a *prima facie* case for personal jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

There are two steps to determine whether a federal court may exercise personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must confer personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows," the Court only needs to consider the second step of the inquiry. *Id.*; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.").

The due process analysis focuses on the number and nature of a defendant's contacts with the forum to determine if the defendant has sufficient "minimum contacts" such "that the

3

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945). These contacts may give rise to specific or general jurisdiction. *Daimler AG v. Bauman, et al.*, 571 U.S. 117, 138 (2014).

General jurisdiction applies to a defendant in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 917 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.4, 104 S. Ct. 1868 (1984). Thus, general jurisdiction applies in "only a limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. The Fifth Circuit has also stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of a defendant. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Specific jurisdiction is a claim-specific inquiry—meaning that the factual basis for the plaintiff's claim must arise out of or relate to the defendant's substantial contacts with the forum. *Asashi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987). To establish specific jurisdiction over a defendant, the plaintiff must demonstrate: "(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." S*troman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008).

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (5th Cir. 2009) (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 469, 470 (5th Cir. 2006)). The Plaintiff cannot supply the "only link between the defendant and the forum." *Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 194 (5th Cir. 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Instead, the "defendant himself" must make deliberate contact with the forum. *Id.* (citing *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Burger King*, 471 U.S. at 382). To determine whether exercise of personal jurisdiction over the defendant would be unfair or unreasonable, the Court considers: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in further fundamental social policies. *Burger King*, 471 U.S. at 477. Once a plaintiff has established sufficient minimum contacts with the forum, a defendant must make a "compelling case" that exercise of jurisdiction is unfair and unreasonable. *Dontos v. Vendomation NZ, Ltd.*, 582 Fed. Appx. 338, 343 (5th Cir. 2014) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

### B.  Forum Non Conveniens

A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would be

oppressive and vexatious to the defendant out of all proportion to plaintiff's convenience. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007). To determine if dismissal pursuant to *forum non conveniens* is appropriate, the Court must consider the "private interest of the litigant" and "[f]actors of public interest." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG-RSP, 2015 WL 5786501, at *6 (E.D. Tex. Sept. 30, 2015) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses and the cost of obtaining attendance of willing witnesses; (3) possibility of view of the premises, if view would be appropriate; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* (citing *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 700 (5th Cir. 2015)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*, at *2–3 (citing *Moreno*, 800 F.3d at 700.)

## III. DISCUSSION

### A. This Court has Personal Jurisdiction over Skullduggery.

#### 1. Skullduggery is not subject to general jurisdiction in Texas.

Skullduggery argues that it is not subject to general jurisdiction in Texas because it does not have "continuous and systematic" business in Texas as to allow general jurisdiction. (Dkt. No. 15 at 10 (quoting *Helicopteros*, 466 U.S. at 416).) Traxxas does not contest Skullduggery's position on general jurisdiction but argues that Skullduggery is subject to specific jurisdiction

based on a stream of commerce theory. (Dkt. No. 35 at 5.) As such, the Court focuses its analysis on whether Skullduggery is subject to specific jurisdiction in Texas.

### 2. Skullduggery is subject to specific jurisdiction in Texas under a stream of commerce theory.

#### a. *Minimum Contacts*

To determine whether Skullduggery has "minimum contacts" with Texas, the Court must identify some act where Skullduggery "purposely availed itself of the privilege of conducting activities [in Texas], thus invoking the benefits and protections of its laws." *See Luv n' Care*, 438 F.3d at 469–470. The Supreme Court has held that the stream of commerce theory provides a basis for establishing minimum contacts. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980). However, the Supreme Court presents two views on the proper application of the stream of commerce theory. *See Asahi Metal Indus. Co.*, 480 U.S. at 107. The plurality of justices addressing the issue reasoned that some "additional conduct" of the defendant purposely directed toward the forum state was required to establish minimum contacts. *Id.* at 112. This "additional conduct may indicate an intent or purpose to serve the market in the forum state." *Id.* Conversely, the concurring justices stated that minimum contacts are satisfied by placing a product in the stream of commerce so long as the defendant was aware that the final product would be marketed in the forum state. *Id.* at 117.

The Fifth Circuit has "declined to follow the suggestion of the plurality in *Asahi*," and held that it only need be foreseeable to a defendant placing a product into the stream of commerce that the product would reach the forum state. *Luv n' Care*, 438 F.3d at 470; *see also Taishan Gypsum Co. v. Gross (In re Chinese-Manufactured Drywall Prods. Liab. Litig.)*, 753 F.3d 521, 548 (5th Cir. 2014). Accordingly, the Court need not analyze whether Skullduggery had an intent that its

7

products be sold in Texas. Instead, the Court needs only focus on whether such was foreseeable to Skullduggery or that Skullduggery expected that its products would reach Texas.

Skullduggery argues that the business conducted by Skullduggery in Texas was "extremely limited and was the result of Texas consumers – or nationwide distributors such as Hobby Lobby or K-Mart – bringing the product into the forum." (Dkt. No. 15 at 12.) Further, Skullduggery argues that Skullduggery's contacts with Texas are not purposeful as Skullduggery does not conduct operations in Texas, does not manufacture in Texas, and does not ship products directly to Texas. (*Id.* at 12–13.)

Traxxas responds that the Accused Products have been systematically sold via a nationwide distribution network which includes retailers that sold the Accused Products in Texas. (Dkt. No. 35 at 6 ("approximately 3.7% of K-Mart's nationwide sales of Accused Products were sold in Texas") (parenthetical omitted).) Traxxas contends that "mere foreseeability or awareness" that a defendant's product made its way to the forum in the stream of commerce is sufficient to establish personal jurisdiction. (*Id.* at 6 (citing *Luv N' Care*, 438 F.3d at 470).)

Traxxas further contends that a *prima facie* showing of a purposeful entry into the Texas stream of commerce is established by a showing that the defendant's products were sold into a nationwide distribution network and that the products were available in Texas. (*Id.* at 7 (citing *IDQ Operating, Inc. v. Aerospace Commc'ns Holdings Co.*, No. 6:15-cv-781, 2016 WL 5349488, at *3 (E.D. Tex. June 10, 2016), *report and recommendation adopted sub nom. Armor All/STP Prod. Co. v. Aerospace Commc'ns Holdings Co.*, No. 6:15-cv-781, 2016 WL 5338715 (E.D. Tex. Sept. 23, 2016)).) Here, Skullduggery sold Accused Products to K-Mart, a nationwide retailer, and the Accused Products were sold in Texas. Thus, Traxxas contends this created Skullduggery's minimum contacts with Texas. (*Id.*) Finally, Traxxas argues that Skullduggery availed itself of

Texas' jurisdiction because Skullduggery made direct sales to Texas retailers and consumers and participated in a trade show promoting the Accused Products in Dallas, Texas. (*Id.* at 8.)

Skullduggery replies that the *IDQ* case is inapplicable because in that case, the defendant was aware that its products would reach Texas as a result of the distribution agreement, but here, Skullduggery contends it was not aware that its distribution agreements would result in "substantial sales" in Texas. (Dkt. No. 38 at 4.) Additionally, Skullduggery replies that displaying products at a trade show, without making offers to sell, is not a sufficient minimum contact to establish personal jurisdiction. (*Id.* at 5 (citing *Dareltech, LLC v. Xiaomi Inc.*, 18 CIV. 8729 (AKH), 2019 WL 3287957, at *8 (S.D.N.Y Jul. 22, 2019)).)

Traxxas sur-replies that Skullduggery's sales into Texas are not isolated or attenuated. (Dkt. No. 41 at 1.) Instead, Traxxas notes that approximately four percent of Skullduggery's Accused Products were sold or shipped into Texas. (*Id.* at 3.) Finally, Traxxas sur-replies that actual awareness that the Accused Products were making it to Texas is not required, it must only be shown that it was foreseeable or that Skullduggery should have known that the products were making their way to Texas. (*Id.* at 3–4.) However, Traxxas contends that Skullduggery did know its products were making their way to Texas because Skullduggery shipped its products to locations in Texas. (*Id.* at 4.)

After consideration of the Parties' arguments and the relevant caselaw, the Court finds that Traxxas has made a *prima facie* showing for personal jurisdiction. The Fifth Circuit has consistently held that a plaintiff satisfies the minimum contacts requirement under a stream of commerce theory by placing a product into the "stream of commerce with the expectation that it would be purchased or used by consumers in the forum state." *In re Chinese-Manufactured*

*Drywall Prods. Liab. Litig.*, 753 F.3d at 548 (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)).

This test is more than satisfied in this case. Traxxas has produced evidence that Skullduggery directly sold its products to both retailers and distributors in Texas. (Dkt. No. 35-2; Dkt. No. 35-3.) Additionally, Traxxas has produced purchase orders which indicate that Skullduggery shipped its products to a distribution center in Texas. (Dkt. No. 35-5.) Finally, Traxxas produced evidence that Skullduggery directly shipped its products to consumers in Texas. (Dkt. No. 35-4 at 58:7–19.) This evidence clearly demonstrates that Skullduggery placed its products in the stream of commerce with the expectation that those products would end up in Texas.

The Court is not convinced by Skullduggery's argument that these sales into Texas are too attenuated or isolated to constitute minimum contacts with Texas. The thrust of Skullduggery's argument is that it did not make "substantial" sales in Texas or was not aware that the same would occur. However, the evidence does not bear out that argument. Approximately four percent of the Accused Products sales were in Texas. (Dkt. No. 41-2.)

Skullduggery attempts to downplay these sales by calculating the percentage of Accused Products sales in Texas over Skullduggery's total sales—totaling 0.6 percent—but the Court is not moved by this calculation. (*See* Dkt. No. 35-4 at 97:10–25.) If the Court only considered the sales of an accused product relative to a defendant's total sales, then a large defendant selling many products, but only a few accused products could claim that its sales of accused products are "isolated." Proportionality to all of a defendant's sales is not the test. Rather, the Court finds that comparing sales of Accused Products in the forum to sales of Accused Products nationwide is a more reliable means for determining whether sales in the forum are isolated.

When considering the sales of the Accused Products in Texas to the sales of Accused Products nationwide, it is clear that Texas made up four percent of Accused Product sales—the fifth highest state over the relevant time period. Therefore, the Court finds that Skullduggery's sales into Texas were not an isolated occurrence. Finding it foreseeable that Skullduggery was placing products in the stream of commerce that were being sold in Texas and that such sales were not merely isolated occurrences, the Court need not address the additional arguments raised by Traxxas and Skullduggery on this issue.

### b. "Arise out of or relating to" requirement

It is not enough that the defendant has minimum contacts with the forum; the underlying cause of action must arise out of those contacts. *Luv n' Care*, 438 F.3d at 472. Skullduggery argues that its contacts with Texas are inconsequential as it has no contacts with Texas beyond possible sales into the state. (Dkt. No. 15 at 12–13.) This argument appears to be another attempt by Skullduggery to downplay the significance of its contacts with Texas, but fails it to address whether Traxxas' claims arise out of or relate to Skullduggery's contacts with Texas.

Here, the minimum contacts conferring jurisdiction are sales of products into Texas. Traxxas' claim is that these products infringe Traxxas' trademarks. The Fifth Circuit has held that sales of infringing products into the forum is sufficient to confer personal jurisdiction. *Luv n' Care*, 438 F.3d at 473 ("Luv n' Care claims infringement from the same bottle that traveled through the stream of commerce from Colorado to Louisiana. This connection between the allegedly infringing product and the forum state is sufficient to confer personal jurisdiction.") Accordingly, the Court finds that there is a sufficient connection between Skullduggery's minimum contacts with Texas and Traxxas claims.

*c.* *Fairness*

Finally, the Court must inquire whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Luv n' Care*, 438 F.3d at 473 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Once the plaintiff has made out a *prima facie* case that the defendant has sufficient minimum contacts with the forum, the burden shifts to the defendant to establish that the exercise of jurisdiction would be unreasonable. *Id.* The Court considers the following factors in making such a determination: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Id.*

Skullduggery argues that defending a lawsuit in Texas would be unduly burdensome because Skullduggery's entire operation is located in California as is all relevant evidence. (Dkt. No. 15 at 13–14.) Skullduggery further argues that California has an interest in protecting its businesses and allowing a court 1,500 miles away to make such determinations without more of a connection would be unreasonable. (*Id.* at 14.)

Traxxas responds that an exercise of personal jurisdiction over Skullduggery in Texas is reasonable because Traxxas is a Texas company and as such its home state has a strong interest in protecting Traxxas from the wrongful conduct of Skullduggery. (Dkt. No. 35 at 9 (citing *Andra Grp., LP v. BareWeb, Inc.*, No. 4:17-cv-00815, 2018 WL 2848985, at *6 (E.D. Tex. June 11, 2018) ("The State of Texas has a strong interest in protecting companies from alleged…trademark infringement.")).)

The Court finds that Skullduggery has not met its burden to demonstrate that the Court's exercise of jurisdiction over Skullduggery is unduly burdensome or unreasonable. "Courts in this

district have considered and rejected distance-related objections to the reasonableness of personal jurisdiction" in the past. *Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, No. 4:19-cv-00696, 2020 WL 569815, at *9 (E.D. Tex. Feb. 5, 2020) (citing *Jacobs Chuck Mfg Co. v. Shandong Weida Mach. Co., Ltd.*, No. 2:05-cv-185, 2005 WL 3299718, at *9 (E.D. Tex. Dec. 5, 2005)).

Furthermore, the Court finds that Texas has an interest in this litigation and Traxxas has a legitimate interest in obtaining relief in this forum. When the alleged injury involves the sales of goods in Texas to Texas consumers, Texas has an obvious interest in the lawsuit. *See In re Norplant Contraceptive Prods. Liab. Litigation*, 886 F. Supp. 586, 592 (E.D. Tex. 1995). Additionally, Traxxas is a Texas entity and as such Texas has a strong interest in protecting it. *See Andra Grp.*, 2018 WL 2848985, at *6. Accordingly, the Court finds that Skullduggery has not established that the Court's exercise of personal jurisdiction over Skullduggery is unreasonable or unfair.

### B. Dismissal Pursuant to *Forum Non Conveniens* is not Appropriate.

In the Motion, Skullduggery makes the alternative request that the Court dismiss this action pursuant to the doctrine of *forum non conveniens*. Specifically, Skullduggery asks the Court to "dismiss the claims against Skullduggery under the doctrine of *forum non conveniens* . . . [because] the balance of private interest and public interest factors this Court may consider when determining whether to dismiss on the basis of *forum non conveniens* strongly weigh in favor of . . . the United States District Court for the Central District of California." (Dkt. No. 15 at 6.)

Section 1404(a) has replaced the traditional remedy of outright dismissal of a case when the transferee forum is within the federal court system. *Atl. Marine Constr. Co v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Dismissal would be appropriate relief if venue in

this Court were improper—an argument Skullduggery did not raise in the Motion and now is waived—or if the transferee forum was not a federal forum (and the *forum non conveniens* factors supported dismissal). *See id.* Considering that Skullduggery acknowledges that venue is proper in the Central District of California and failed to challenge proper venue in this Court until its reply brief, dismissal under *forum non conveniens* or for improper venue would not be appropriate. *Hammers v. Mayea-Chang*, No. 2:19-cv-181-JRG, 2019 WL 6728446, at *8 n. 10 (E.D. Tex. Dec. 11, 2019) (finding that arguments raised for the first time in a reply brief are waived).

**IV.    CONCLUSION**

For the foregoing reasons, the Court is of the opinion that the Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion to Dismiss on Basis of Forum Non Conveniens and Memorandum of Law in Support (Dkt. No. 15) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 4th day of March, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE